# ELMER KLAR, d.b.a. ELMER KLAR CONSTRUCTION COMPANY, v. PARK CONSTRUCTION COMPANY AND OTHERS.

161 N. W. (2d) 839.

September 6, 1968—No. 41,035.

*O. A. Brecke* and *J. Robert Nygren,* for appellants.

*Markert Law Firm* and *Sullivan & Schiefelbein,* for respondent.

Heard before Knutson, C. J., and Nelson, Murphy, Rogosheske, and Frank T. Gallagher, JJ.

Rogosheske, Justice.

Appeal from an order of the district court denying the motion of defendants Park Construction Company and Travelers Indemnity Company for judgment notwithstanding the verdict or for a new trial.

Plaintiff, Elmer Klar, brought this action against defendants for an alleged breach of contract involving the construction of two sewerage stabilization ponds for defendant borough of Belle Plaine. Plaintiff had subcontracted with defendant Park Construction Company (hereafter Park) to perform certain clearing and excavation work on the site. The borough had let the main contract to Park, and defendant surety company supplied a performance bond for Park. The substance of this action is plaintiff's assertion that Park in some manner, during the course of alterations and modifications which were made in the work as a result of poor soil and weather conditions, acted arbitrarily, refused to negotiate, or otherwise prevented him from performing his obligations under the contract.

The case as we view it turns wholly upon the question of the sufficiency of the evidence to support plaintiff's allegation of breach of contract. The operative focus of the dispute concerns the redesign of the project and the alterations which were made as a result of the redesign.

The project as originally planned and as ultimately executed called for the construction of two rectangular ponds to be formed by dikes of a specified height and slope. The excavation of these dikes and the formation of the sloping sides set forth in the plans and specifications were by the terms of the subcontract to be partially performed by plaintiff. Park contracted with plaintiff to clear the building site of vegetation and to excavate 100,000 cubic yards or approximately one-half of the earth to be moved. The subcontract set a price of $325 per acre on the clearing work and 27 cents per cubic yard on the removal of earth. The subcontract included in its terms the provisions of the main contract made between the borough and Park.[1] Among these provisions was one vesting broad power in the engineer of the project to alter and modify the plans. A concomitant provision set forth several alternative methods for

---

[1] At the close of plaintiff's evidence, the action against the borough was voluntarily dismissed.

the recomputation of the contract price for any increase in the cost of the project which might result from modifications in the plans. This provision permitted a contracting party to recover the increased costs caused by alterations upon completion of the contract work. The main contract also provided that work on the project would be completed within 135 days.

The work on the project was commenced in August 1961. As work progressed, it became apparent that poor soil quality and rainy weather made it impossible to complete the work as planned. The slope of the dikes and the rate of compaction specified in the plans had to be altered. Test borings were made of the soil at the site and the project was closed down for redesign of the plans.

The plaintiff was informed of this development and advised by Park that he might seek other work for his equipment while the plans were being revised. The shutdown occurred on September 29 and the new plans were designed and approved by October 21. Two days later on October 23, Park called plaintiff and requested that he return to the site and complete his portion of the work. In response plaintiff told Park that his equipment was at work on another job but would be available again within 10 days to 2 weeks. However, on November 21, when plaintiff still had not returned to the site Park wrote him a letter advising that nearly a month had gone by and they had not heard from him, could not wait any longer for him to return, and would therefore put their equipment to work in the areas designated in the subcontract for his operations. The apparent reason for this move was the contract requirement that the work on the two ponds be completed within 135 days. The work was not, however, completed on time and winter weather arrived, forcing discontinuance of the work on December 11, 1961. Work was begun again the following spring and on May 14 plaintiff was again notified by letter that the portion of the construction allocated to him had not yet been completed and that he should attempt to finish it soon. Plaintiff did not respond. Ultimately, therefore, all of the work was completed by Park in December 1962.

Almost a year and a half later, in April 1964 plaintiff commenced this action for damages for breach of contract. In his complaint he

alleged that the breach resulted because Park "proceeded arbitrarily to change and alter the plans and specifications on which plaintiff's bid for the work was based, without allowing plaintiff his additional costs caused by such change * * *." No other basis for the suit was alleged in the pleadings. The case was heard before a jury at which time the trial court characterized the plaintiff's case in its instructions to the jury as one based upon the defendant's having "prevent[ed] him from performing the contract." The jury returned a verdict of $8,738 in favor of the plaintiff which was $500 more than was demanded by the plaintiff in his argument to the jury. On appeal, the theory of the case has again been altered. In his brief and arguments to this court, plaintiff has finally stated his case as one based upon defendant Park's refusal to negotiate a new price for the redesigned work and to provide a copy of the plans for the redesigned work.

The question before this court is thus whether upon any of the theories, whether pleaded, presented, or argued, it can be said that plaintiff is entitled to recover. We are constrained to hold that plaintiff has not, upon any theory, met his burden of proving that the defendant Park did in fact breach the contract.

Doubtless there is no basis for recovery on the theory, now abandoned by plaintiff, that Park acted arbitrarily in redesigning the work. The general contract, which was incorporated in the subcontract, specifically permitted the engineer broad discretion in altering and modifying the plans. There is no evidence in the record that the actions of Park were in any way arbitrary. Indeed, the record reveals that they were necessary in order to complete the project.

On the theory submitted to the jury, namely that Park "prevented" plaintiff from completing the work, the evidence as a matter of law is insufficient to sustain a recovery. The only testimony which might arguably support this theory is that of plaintiff concerning a visit he made to Park's office to discuss the redesigned work and to negotiate a new price for the increased cost of the work. The fact that he did not succeed in speaking with any employee of Park on that occasion does not in itself justify a verdict. It is undisputed that plaintiff did not communicate by letter, telephone, or otherwise with Park concerning the redesigned work,

and that he was fully informed about the redesign. It appears from plaintiff's own testimony that he did not avail himself of the procedures established by the contract for asserting and recovering a claim for additional costs caused by the redesign of the project.

Finally it is clear that, based upon the theory urged before this court on appeal, plaintiff is not entitled to recover. The claim of plaintiff in his brief and at oral argument is that Park refused to negotiate concerning the question of the increased cost of the work after the redesign, refused to provide the plaintiff with a copy of the revised plans, and demanded that he perform the work at the originally established contract price. Yet none of those claims find any support in the record. Indeed, with respect to the claimed refusal to provide a copy of the new plans, it appears that copies of it were at all times available to plaintiff at the construction site.

The testimony before us does reveal that plaintiff was advised of and accepted the alterations in the work, properly withdrew his equipment to another job, and then declined to return to the project. The record makes clear that plaintiff did not act in accordance with the scheme provided for in the contract which called for his returning to the project and then making his demand for additional compensation. It is axiomatic that plaintiff is not entitled to recover where he has failed to sustain his burden of proof.

Reversed.